**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALANA CAMPOS SOUZA, TARA LEIGH PATRICK A/K/A CARMEN ELECTRA, EVA PEPAJ, IRINA VORONINA, KIM COZZENS, RACHEL KOREN, TIFFANY TOTH GRAY, LINA POSADA, LUCY PINDER, MELANIE IGLESIAS, and PAOLA CANAS, | CIVIL ACTION NO. |
| Plaintiffs, | |
| - against - | 3:19 CV 00869 |
| IND, LLC d/b/a SCRUPLES GENTLEMEN'S CLUB a/k/a SCRUPLES LOUNGE and KIMBERLY ANGELICO, | |
| Defendants. | June 5, 2019 |

**COMPLAINT**

Plaintiffs ALANA CAMPOS SOUZA, TARA LEIGH PATRICK A/K/A CARMEN ELECTRA, EVA PEPAJ, IRINA VORONINA, KIM COZZENS, RACHEL KOREN, TIFFANY TOTH GRAY, LINA POSADA, LUCY PINDER, MELANIE IGLESIAS, and PAOLA CANAS,  (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants IND, LLC d/b/a SCRUPLES GENTLEMEN'S CLUB a/k/a SCRUPLES LOUNGE and KIMBERLY ANGELICO (collectively "Defendants"), respectfully allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use of images of Plaintiffs, each of whom are well-known professional models, in an advertising

- 1 -

campaign to promote their strip club, Scruples Gentlemen's Club ("Scruples" or the "Club") in Bridgeport, Connecticut.

2.      As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of privacy and publicity as pertains to Defendants' unreasonably placing of each of them in a false light before the public; d) violation of the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat.§ 42-110b; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant IND, LLC is a corporation formed under the laws of the state of Connecticut, with its principal place of

business located at 369 North Avenue, Bridgeport, CT 06606.

7.     Upon information and belief, defendant Kimberly Angelico ("Angelico") is a resident of the state of Connecticut, and at all relevant times was the owner, principal and/or chief executive officer of IND, LLC.

8.     Venue is proper in the United States District Court for the District of Connecticut because Bridgeport, Connecticut is Defendants' principal place of business.

9.     A significant portion of the alleged causes of action arose and accrued in Bridgeport, Connecticut and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bridgeport, Connecticut.

## PARTIES

### *Plaintiffs*

10.     Plaintiff Alana Souza a/k/a Alana Campos ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

13.     Lucy Pinder ("Pinder") is a well-known professional model, and a resident of the United Kingdom.

14.     Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

16.     Plaintiff Tiffany Toth-Gray ("Toth") is a well-known professional model, and a resident of Orange County, California.

17.     Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

19.     Plaintiff Melanie Iglesias ("Iglesias") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Rachel Koren ("Koren") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

21.     According to publicly available records, defendant IND, LLC is formed under the laws of the state of Connecticut.  During times relevant to this action, IND, LLC operated Scruples, a strip club located at 369 North Avenue, Bridgeport, CT 06606.

22.     Upon information and belief, Angelico, in her capacity as owner of IND, LLC maintains operational control over Scruples including all advertising relating thereto and did so during all times relevant to the allegations herein.

## FACTUAL ALLEGATIONS

23.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

24.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning

potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

25.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed, or were otherwise affiliated or associated with Scruples.

26.     In the case of every Plaintiff, such appearance was false.

27.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

28.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

29.     Campos is a Brazilian model who started working as a model when she was only fifteen years of age, when she was scouted by the director of Ford Models, which became her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at twenty years of age, where she is still currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Ashtonish Mag*, *Viva Glam*, and *Bliss Mag*. She has also been in many campaigns for companies including Arden B, Target, Chynna Dolls, Frederick's of

Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas. Campos has over 519,000 followers on Instagram.[1]

30.     That we know of, Campos is depicted in the photos in Exhibit "A" to promote Scruples on its website. This Image was intentionally altered to make it appear that Electra was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

31.     Campos has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Electra is a world-famous actress, recording artist, and entrepreneur, who over the past two (2) decades has consistently been one of Hollywood's most versatile personalities and performers.  Electra was first signed by music superstar Prince, who produced her first, self-titled album on his Paisley Park record label.  Electra then ventured into acting, first with regular roles on *Baywatch* and MTV's *Singled Out*, and then into film, with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*.  Electra won the role as the face of MAX Factor, following in the famous footsteps of Marilyn Monroe and Jaclyn Smith, and

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

in 2006, became a published author with the release of her book, *How to be Sexy*.

Electra also formed a dance troupe, The Bombshells, who perform nationwide, and

recently released the fitness DVD series, "Carmen Electra's Aerobic Striptease." In

2009, Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque

Show to sold-out audiences; in 2010, Electra starred in the film, *Oy Vey, My Son is Gay*,

and in 2011 Electra starred in the film *2-Headed Shark Attack*, alongside Charlie

O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest

appearances on CW's hit show, *90210*. In 2012, Electra released her return-to-music

single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel, which hit the

number 25 spot on Billboard's Dance Club Play Chart. Since 2014 Electra has released

numerous additional singles to worldwide acclaim. Electra can currently be seen as the

host of WEtv's new reality docu-series *Ex Isle* which premiered in January 2016. She

has more than 3 million Facebook followers, over 830,000 Instagram followers, and

over 363,900 Twitter followers.

33.     That we know of, Electra is depicted in the photos in Exhibit "B" to

promote Scruples on its Facebook page. This Image was intentionally altered to make it

appear that Electra was either a stripper working at Scruples, that she endorsed the

Club, or that she was otherwise associated or affiliated with the Club.

34.     Electra has never been employed at Scruples, has never been hired to

endorse Scruples, has never been affiliated, associated or connected with Scruples,

has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

35.     Pepaj is a successful and highly in demand runway and high fashion

model, who has appeared in many print campaigns, and commercials for products such as Diet Coke. Pepaj has also appeared in the films: *The Hand Off*, *Interior: Leather Bar*, *The Romp*, and on HBO's *True Detective.*

36.    That we know of, Pepaj is depicted in the photos in Exhibit "C" to which were repeatedly published on Scruples' Facebook page.  These Images were intentionally altered to make it appear that Pepaj was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

37.    Pepaj has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.    Voronina is, and at all times relevant to this action was, an internationally known model and actress. After becoming *Playboy's* Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM, Maxim, Playboy* (in 20 countries), *Max* (Italy), *Ocean, Shape, 944, Knockout, Q* (UK), *People* (Australia), and most recently *Kandy, Rukus, Vape* and *Browz* magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named *Kandy Magazine's* Model of the Year as a result of her fans downloading the highest number of

digital issues that year. She loves connecting with her fans and stays active daily across all social media outlets for her 4+ million followers on Facebook, Instagram, Twitter and YouTube. (Facebook - 3.6 million, Instagram 705K, Twitter 152.4K) Voronina also got her first big screen break in "Reno 911!: The movie.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," to name a few. In 2016, Voronina returned to the big screen playing supporting roles in "Laser Team" and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced.

39.     That we know of, Voronina is depicted in the photos in Exhibit "D" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Voronina was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

40.     Voronina has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Koren is an internationally known, and highly sought after, model who has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show *Bikini Destinations*, shot for major campaigns in Los Angeles, and is the face of numerous major brands.  Koren can be seen across the nation on billboards, buildings and bus stops in a campaign for MIDORI along with Kim Kardashian.   As an

actress, Koren has appeared in *Date Night*, with Steve Carell and Tina Fey, in *The Closer*, and many others.  She has also appeared in campaigns for brands such as Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, Modern Salon Magazine, No Fear, Axe Body Spray, Paul Mitchell, Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine, Sunset Tan, Divine Boutique, Esquire Magazine, Vogue Magazine, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, Rebel X Magazine, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, Viva Glam Magazine, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, Swim Magazine, American Honey, Have Faith Swimwear.  She also owns her own company, Cashmere Hair Extensions, which appeared on ABC's *Shark Tank* in 2013.  She has over 122,000 followers on Instagram.

42.     That we know of, Koren is depicted in the photos in Exhibit "D" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Koren was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

43.     Koren has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and

*Maxim*, as well as appearing in countless other catalogs and publications. Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 700,000 Instagram followers, and over 100,000 Twitter followers.  In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

45.    That we know of, Toth is depicted in the photos in Exhibit "D" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Toth was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

46.    Toth has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.    Cozzens is a model and actress who has appeared on commercials for Old Spice and New Amsterdam Vodka, among others.  Cozzens has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, Sandals Resort, Dodge and Pepsi, as has appeared in *Maxim*, among other magazines.  In total, Cozzens has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

48.    That we know of, Cozzens is depicted in the photos in Exhibit "D" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Cozzens was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

49.     Cozzens has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Posada is a fashion model and a fashion designer. She is best known for her appearances in the Bésame and Espiral lingerie collection photo shoots. Posada has also modeled for Paradizia Swimwear, Babalú Swimwear, Irgus Swimwear, Ujeans, as well as many others. She has over 5,695 Twitter followers, over 17,480 Facebook followers, and over 93,000 Instagram followers.

51.     That we know of, Posada is depicted in the photos in Exhibit "E" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Posada was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

52.     Posada has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     Pinder is an English model, actress, host, businesswoman, and one of Great Britian's most famous glamour models.  Pinder has been featured in hundreds of magazines, including *FHM, Loaded, Nuts*, and the *Daily Star*, as well has appeared on numerous occasions on the *FHM* "100 Sexiest Women in the World" list.  In addition, Pinder has an established and developing acting career with many TV appearances and Film credits, and has appeared on shows such as *I'm Famous and Frightened, Soccer*

*AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Dream Team and Bo! in the USA*. Pinder was a contestant on *Celebrity Big Brother*, had starring roles in films such as *Strippers vs Werewolves, The Seventeenth Kind, Age of Kill and Warrior Savitri*.

54.    That we know of, Pinder is depicted in the photos in Exhibit "F" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Pinder was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

55.    Pinder has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.    Iglesias is an American model, actress and social media influencer. Since being voted *Maxim's* "Hometown Hotties" winner in 2010, she has been featured in magazines such *World's Most Beautiful*, *Esquire*, and *Vibe*, has appeared in the World Poker Tour series, and has appeared as herself on all seasons of MTV's *Guy Code* and *Girl Code*, as well as the *Guy Code* spin-off, *Guy Court*.  Iglesias has likewise appeared as a guest on the *Ellen DeGeneres Show*, has hosted *MLB Fan Cave*, and can be seen, in her first starring role in a feature film, in *Abnormal Attraction*, slated for release in 2016.  Her social media consists of 1.3 million Instagram followers, 1.6 million Facebook followers, and 728,000 Twitter followers.

57.    That we know of, Iglesias is depicted in the photos in Exhibit "G" to promote Scruples on its Facebook page.  This Image was intentionally altered to make

it appear that Iglesias was either a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

58.    Iglesias has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

59.    Cañas is a Colombian born model now residing and working in the United States. Cañas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Cañas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Gold Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Cañas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Cañas has 384,000 Instagram followers and over 9,100 Facebook likes.

60.    That we know of, Iglesias is depicted in the photos in Exhibit "H" to promote Scruples on its Facebook page.  This Image was intentionally altered to make it appear that Canas was either a stripper working at Scruples, that she endorsed the

Club, or that she was otherwise associated or affiliated with the Club.

61.     Canas has never been employed at Scruples, has never been hired to endorse Scruples, has never been affiliated, associated or connected with Scruples, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

### Defendants' Business

62.     Upon information and belief, Defendants operated, during the relevant time period, Scruples, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

63.     Upon information and belief, and in furtherance of its promotion their promotion of Scruples, Defendants own, operate and control Scruples' social media accounts, including its Facebook, Twitter, and Instagram accounts.

64.     Defendants used Scruples Facebook, Twitter, and Instagram accounts to promote Scruples, and to attract patrons thereto.

65.     Defendants did this for their own commercial and financial benefit.

66.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Scruples, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

67.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Scruples to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and

other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

68.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Scruples and at no point have any of the Plaintiffs ever endorsed Scruples, or otherwise been affiliated or associated with Scruples.

69.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

70.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

71.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

72.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

73.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Scruples by and through various marketing and promotional mediums including, without limitation, Scruples' website, Twitter, Facebook, and Instagram.

74.     Defendants showcased Plaintiffs' Images on Scruples social media pages to create the false impression that Plaintiffs worked at Billy Dean's, endorsed same, or were otherwise associated or affiliated with same.

75.     Defendants did so to attract clientele to Scruples, promote Scruples, and thereby generate revenue for Defendants.

76.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Scruples.

77.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

78.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

79.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

80.     At no point were any of the Plaintiffs ever affiliated with Scruples, or

Defendants.

81.     Each Plaintiff's Images was used without her consent.

82.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

83.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

84.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Scruples website, Twitter, Facebook, or Instagram accounts.

85.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

86.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B))**

87.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

88.     The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

89.     As set forth herein, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Scruples, or agreed to appear in Scruples' advertisements.

90.     Given the false and misleading nature of the advertisements, they had the

capacity to deceive consumers and, upon information and belief, did so deceive consumers.

91.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Scruples.

92.     Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

93.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

94.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

95.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

96.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A))**

97.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98.     The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

99.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Scruples, or worked at, sponsored, or approved of Scruples' goods, services or commercial activities.

100.    This was done to promote and attract clientele to Scruples, and thereby generate revenue for the Defendants.

101.    Thus, this was done in furtherance of Defendants' commercial benefit.

102.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Scruples, nor worked at, sponsored, or approved of Scruples' goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Scruples.

103.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

104.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

105.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to

punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Right of Privacy: Appropriation of Likeness)

106.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.    As set forth herein, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

108.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

109.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Scruples' website or related social media accounts as part of Defendants' advertising campaign.

110.    At all relevant times, the Scruples' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

111.    Scruples website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

112.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Scruples.

113.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

114.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

115.    At no point did Defendants ever compensate Plaintiffs for its use of their

Images.

116.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FOURTH CAUSE OF ACTION
### (Right of Privacy: False Light)

117.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

118.    As set forth herein, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

119.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent and then portraying each Plaintiff in a false light in Scruples' advertisements.

120.    Specifically, Defendants invaded and violated Plaintiffs' privacy and portrayed them in a false light by creating the false impression with the consumers that Plaintiffs were either strippers at Scruples, endorsed same, were affiliated, associated, or otherwise connected with same, or had agreed to promote same.

121.    Affiliation with a strip club could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with her or drop her as a model.

122.    At all relevant times, the Scruples' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

123.    Scruples website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

124.    Upon information and belief, Defendants use of Plaintiffs' Images did in

fact attract clientele and generate business for Scruples.

125.   At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

126.   Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

127.   At no point did Defendants ever compensate Plaintiffs for its use of their Images.

128.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b)

129.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.   Defendants operated Scruples' website and social media accounts in order to promote the Scruples, to attract clientele thereto, and to thereby generate revenue for Defendants.

131.   As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce within the State of Connecticut.

132.   Defendants published Plaintiffs' Images on Scruples' website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

133.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

134.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Connecticut law.

135.    Defendants' advertising practices offends the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

136.    Defendants advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Scruples.

137.    Defendants advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Scruples.

138.    There are no benefits to Defendants advertising practices as set forth herein except a benefit to Defendants own commercial interests.

139.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

140.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

141.    As required by Conn. Gen. Stat. § 42-110g(c), Plaintiffs have transmitted a copy of this Complaint to the Office of the Attorney General of the State of Connecticut.

## SIXTH CAUSE OF ACTION
### (Defamation)

142.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

143.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

144.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

145.    None of these representations were true.

146.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, endorsed the Club, or were otherwise affiliated, associated or connected with the Club.

147.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

148.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been

compensated for the use of their Images.

149.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

150.    Defendants' publication of Plaintiffs' Images constitutes defamation under Connecticut law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

151.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Connecticut law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

152.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

153.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Connecticut law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

154.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and

exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

155.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Scruples websites and social media accounts.

156.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

157.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and Connecticut, were not violated.

158.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted and had not paid.

159.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

160.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

161.    Plaintiffs hereby repeat and reallege each and every allegation set forth in

the preceding paragraphs as if fully set forth herein.

162.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

163.   By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

164.   As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
#### (Unjust Enrichment)

165.   Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

166.   As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Club to the general public and potential clientele.

167.   Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Club or endorsed the Club, or were otherwise associated, affiliated or connected with the Club.

168.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

169.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

170.   Defendants have been enriched by their unauthorized control over, and

publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Club.

171.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

172.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Quantum Meruit)**

173.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

174.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

175.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

176.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

177.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial, pursuant to Conn. Gen. Stat. § 42-110g(a);

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and pursuant to Conn. Gen. Stat. § 42-110g(d);

(e) For such other and further relief as the Court may deem just and proper.

THE PLAINTIFFS,
ALANA CAMPOS SOUZA, TARA
LEIGH PATRICK A/K/A CARMEN
ELECTRA, EVA PEPAJ, IRINA
VORONINA, KIM COZZENS, RACHEL
KOREN, TIFFANY TOTH GRAY, LINA
POSADA, LUCY PINDER, MELANIE
IGLESIAS, and PAOLA CANAS


/s/ John  J. Radshaw III
John J. Radshaw III (ct19882)
900 Chapel Street, Suite 620
New Haven, CT 06510
203.654.9695 | 203.721.6182 f
jjr@jjr-esq.com

and

John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming